BARR *v.* BARR.

1. DIVORCE—PROPERTY SETTLEMENT.
   In suit for divorce evidence *held*, to show that husband had been repaid by wife for his interest in drug store business, including good will, turned over to her by him to manage.

2. SAME.
> Wife taking possession of dwelling house that husband was
> purchasing on contract, with his consent, at time of their
> separation, and paying to him more than his equity therein,
> was entitled to award thereof, on granting her divorce decree,
> although contract was not assigned to her.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 14, 1932. (Docket No. 107, Calendar No. 36,186.) Decided June 6, 1932.

Bill for divorce by Blanche D. Barr against Alfred L. Barr on grounds of extreme cruelty. Cross-bill for divorce by defendant. Decree for plaintiff. Defendant appeals. Affirmed.

*Ira A. Beck,* for plaintiff.

*George A. Winkler* and *N. A. Cobb,* for defendant.

WIEST, J. This is an appeal by defendant from an award of property to plaintiff in a decree of divorce.

The parties were married in February, 1915, and separated in November, 1918. They have no children. At the time of the marriage defendant operated a drug store in the city of Battle Creek. He was not a registered pharmacist, but employed one. Plaintiff had been a nurse, and, after marriage, qualified and became a registered pharmacist. November 26, 1918, a property settlement was made, under which defendant agreed to pay plaintiff the sum of $1,400, in adjustment at that time of "all property matters, money claims and claims of every kind and nature between them by reason of their relation of husband and wife;" $500 was paid at that time; $200 was to be paid within 90 days, and the balance in equal monthly payments of $50. Subsequent payments were made by checks but not cashed

by plaintiff, with the exception of one for $50. November, 1918, plaintiff filed a bill for divorce, but later this was abandoned and dismissed. At the time of the separation defendant was drinking quite heavily, and he continued to do so and his business got into rather bad financial condition. In February, 1920, defendant purchased, on land contract, a dwelling house in the city of Battle Creek.

We now quote, with approval, the following from the opinion of the circuit judge:

"On February 15, 1922, the defendant, Alfred L. Barr, by bill of sale, turned over to Blanche D. Barr the drug store and fixtures, stating a consideration therein of $1 and other good and valuable consideration. Defendant then left town, and plaintiff has since successfully conducted said store. At the time said store was turned over to plaintiff, the inventory showed the stock to be of the value of $6,563.94, and the fixtures of the value of $3,850, or a total of $10,413.94. There were outstanding debts against said store at that time in the sum of $9,686 which plaintiff paid after she took over the store.

"At the time plaintiff took over the store, she also took possession of the home that defendant was purchasing on a contract, in which it is admitted he had an equity at that time of $1,700. Plaintiff continued to make the payments on said contract, and later secured a deed thereof in her own name.

"Since plaintiff took over the store, she has paid to defendant the sum of $4,882.29 in cash and credits on his personal debts and accounts, including the $850 owing her on said uncashed checks. * * *

"It is the claim of the plaintiff that in February, 1922, she went to defendant, Alfred L. Barr, to collect what was due her on the checks of $850 that she held against him. That he told her he didn't have any money, but that he would give her the drug store, because the creditors were going to get it any-

way. That she was contemplating going to Chicago to take a job, but after they talked it over, she and Mr. Barr went to an attorney, where a bill of sale was made out to her of the stock and fixtures of said drug store, and then went to the owner of the building in which the store was located and secured a lease in plaintiff's name. Plaintiff claims that she understood that she was to take over the store and defendant's equity in the land contract and was to pay him therefor the value of the equity that he then had in said land contract and if she made good in the store, she was to pay him what she thought it was worth.

"Defendant claims that he turned over the store to plaintiff and she was not to pay anything on the store for a period of three years, on condition, however, that she was to keep up the payments on the house, pay the taxes, collect the rent, and keep up the defendant's life insurance policy for him, and she would not have to pay any interest on the purchase price of the store. That she was eventually to pay him for the store the sum of $16,000 less the current debts against the same.

"After listening to the evidence as submitted in said case, I am convinced that the plaintiff never agreed to pay defendant the sum of $16,000 less the current debts for said drug store, but that owing to the fact that defendant had been drinking heavily for some time and neglecting his business and was being pressed by his creditors, he was fearful that he would lose the store, and that he did as plaintiff claims, turned the store over to her, together with his interest in the land contract with the understanding that she would pay him his equity in the land contract and if she made a success of the business, she was to pay him whatever she thought the store was worth. * * *

"The evidence shows that defendant at the time he turned the business over to plaintiff was drinking heavily and the business had suffered thereby

and his creditors were pressing him for payment of their accounts; he was having trouble getting a lease of the premises, and in fact, it looked as though he might lose all he had invested in the store, as well as his equity in the land contract. The stock was inventoried at the sum of $6,563.94, the fixtures at $3,850, making a total of assets of the store in the sum of $10,413.94. Offset against this sum were the current debts which amounted to the sum of $9,686, leaving an equity in the store of $727.94 over and above any 'good will' that there might have been.

"Defendant's equity in the land contract for the house is valued at the sum of $1,700 at the time it was turned over, making a total equity of defendant in said store and land contract in the sum of $2,427.94. As against this equity the evidence shows that plaintiff has paid the defendant the sum of $4,882.29, or $2,454.35 more than his entire equity in the business and land contract was at the time he turned them over to her.

"While the evidence shows that the drug store had a fine location and when properly looked after paid a good profit, after listening to the testimony in the case, I cannot but be impressed with the fact that the business was on the verge of failure when it was turned over to plaintiff, and was turned over to her for that very reason; that defendant went away and left plaintiff to save what she could, and but for her hard work and industry, the defendant would have lost all he had invested in said business, as well as his equity in said land contract. The evidence shows that he has been amply repaid for all of this interest in said property, including any 'good will' that there was in said business and he is not entitled to the relief prayed for in his cross-bill of complaint."

Defendant, by his cross-bill, seeks a decree awarding him the dwelling house because he never assigned the land contract to plaintiff.

We think, as did the circuit judge, that plaintiff is entitled to have the dwelling house and the decree herein will operate as an assignment of the land contract to plaintiff.

The decree is affirmed, with costs to plaintiff.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.